By the Court,

Nelson, J.
This case is in some respects peculiar, and involves a principle of very general importance and application. An action on the case lies against a master for any injury done to another, through the negligence or unskilfulness of his servant, while acting in his employment. So partners are responsible in the same way for the conduct of their servants, as is exemplified by the actions in the books brought against them for driving against carriages or running down ships ; and in these cases, if the carriage or snip is the joint property of the partners, it is unimportant whether it was under the direction or guidance of one of the partners, or under the care or management of their servant, for qui facit peralium facit per se. 2 Selw. N. P. 841 and cases. 5 T. R. 649. 2 Bos. & Pul. 365. 1 id. 404. 8 T. R. 186. 1 Vesey & Beame, 117. Gow on Part. 224. The material question then is, whether the defendants here, upon the facts disclosed, were partners in the business of running the line of stages from Utica .to Rochester, for if so, the driver, while engaged in that employment, was legally the servant of all the proprietors.
It may be laid down as an established principle of law, that whoever participates in the profits of a trade or business, or has a specific interest in the profits themselves, as such, becomes chargeable as a partner with respect to third persons ; and the chief reason is, that by the effect of the agreement for a share in the profits, the party takes from the creditors a part of the fund which is the proper security to them for the payment of their debts, and upon which they have a right to rely. 16 Johns. R. 40. A partnership is also defined to be a community of interest between two or more, and a sharing of profit and loss. To constitute a partnership in a single concern, there must be a joint understanding or agreement to share in the profit and loss. 9 Johns. R. 495, 6. 1 Wendell, 463. Selw. 859, 60. 17 Vesey, 412. Gow on Part. 14, 15. This *last author says, page 6, it may be laid down as a general and undeniable proposition, that persons having a mutual interest in the profits and loss of any business, or particular branch of business carried on by them, or persons appearing ostensibly to the world as joint traders, are to be recognized and treated as partners, whatever may be the nature of the agreement under which they act, or whatever motive or inducement may prompt them to such exhibition.
We will concede that the defendants should not be made liable solely on the *582 ground that they have held themselves out to the public as joint partners, because the reason which sustains their joint liability under that aspect of the case does not exist. Here was no confidence reposed in the joint responsibility of the defendants, which of itself would give a claim upon them. The fact, however, would be some evidence of such partnership; and if the party injured had been a passenger, it would be conclusive, for then the reason of the rule of law would apply; having trusted to the responsibility of all who held themselves out as joint proprietors in the line, he would be entitled to exact it. So in respect to every other person who may have acted upon the faith of the character thus assumed by themselves. It would be otherwise if he acted under a full knowledge of the private arrangement existing between the proprietors. His claims then would be qualified accordingly.
The defendants, if liable at all, must be so on the ground that they have a community of interest, and are entitled to share in the profits of the business in proportion to the capital invested, or in this case, to the distance ran upon the line with their coaches. The arrangement between the proprietors is obviously founded upon the assumption that the expense of running upon any part of the line in a given distance is the same, because the receipt or fare is divided upon that basis ; each one receiving an equal amount of fare per mile, which would be inequitable if the expenses of running the stages were not equal. For all purposes of the partnership then, the agreement is the same in effect as if each had put in a capital equal to the value of their coaches and teams, at the commencement of the concern, and after deducting the expenses of running *them from the aggregate receipts, divided the profits. If this result would not be the same as that produced under the actual arrangement, it would be unequal. Each proprietor now pays his own expenses on his section, and receives for running it the same as any other for a like distance. All he receives over and above the expenses are profits. If the expenses of each are the same, the profits are the same per mile. It is quite immaterial how the fact may be, so far as the question of partnership is concerned, if the principle of the arrangement and the execution of it, according to its spirit, lead to an equal participation of the profits. The law assumes it will be thus executed. The qualification of the ordinary contract of partnership, in this case, grows out of the nature of the business and the opportunity afforded to each partner to superintend more exclusively than usual his interest in the concern. Instead of each disbursing the expenses out of the income for the benefit of the general concern, which would leave only the profits to be divided, he disburses only his own, and in proportion to the extent of his interest. Upon the theory of the arrangement, the division is, then, of the income or receipts, though in reality (assuming each to have taken his expenses out of it as received) it is only of the profits. These may be varied according to the economy or superior management of each proprietor in meeting his expenses ; but in either view of the case, there is a division of the profits of the concern, in the legal and strict sense of the term, for a division of the fare, includes a division of the profits, if any.
The question here presented has frequently arisen in England and been decided there, or an opinion expressed in conformity to the above principles. Waland v. Elkins, 1 Starkie’s R. 272, 2 Com. L. R. 387, was an action on the case to recover damages for breaking the plaintiff’s windows, in consequence of the negligence of the driver of the defendant’s wagon. The defendant and one Dyson were carriers from London to Gosport, and by an arrangement between them, Dyson horsed the wagon from London to Farnham, and to Gosport; and when the injury happened, the *584 wagon was drawn by the horses and driven by the servant of Dyson, with whose employment the defendant had *no concern; the wagon was
the property of the defendant. The plaintiff recovered on the ground that the defendant and Dyson were jointly entitled to the profits; that the wagon was drawn for the benefit of the defendant as well as Dyson; and that the driver was legally the servant of the defendant, though, for some purposes and as between the parties themselves, he was the servant of Dyson alone. In Fromont v. Coupland, 9 Com. L. R. 300, the plaintiff and defendant ran a coach from Bath to London, the plaintiff finding horses for one part of the road and the defendant for another, and the profits of each party were calculated according to the distance ran by his own horses. It was held that they were partners in the concern. The same principle is strongly stated by Mr. Justice Bayley, in Laugher v. Pointer, 12 Com. L. R. 321. He says, in many instances one proprietor horses a coach for one stage, another for a second, and so on; and in some instances, the man who finds the horses, finds the coachman also. Shall this take away the liability of all the proprietors 1 Shall it be said, if the coach does an injury upon a given stage, that the proprietor who finds the horses and driver for that stage shall be alone answerable ? The horses and driver are found by one to do the work of all, and employed upon the work and for the benefit of all, and therefore all are responsible. Gow on Part. 36, 7. id. 181. Selw. N. P. 843.
It is clear in this case that all the proprietors have a community of interest in the profits, and share in them in proportion to the money, labor and skill brought into the business. The proceeds from the entire route are thrown into a common fund and divided. Each has the benefit of any peculiar or superior advantages which may appertain to one portion of it over another; and it was well said by Mr. Justice Bayley, that the “ horses and driver are found by one to do the work of all, and for the benefit of all” under such circumstances. Each sharing in the profits of the whole route, and of course of each section of it, it is not only just, but in accordance with well settled principles of law, to hold all responsible for the faithful discharge of their duty, and to respond in damages for any injury which happens from the negligence or unskilfulness of any of the proprietors or their servants. It is just to the *public and to themselves. The former have a right to claim the responsibility of all who profit directly by their patronage ; and as to the latter, the loss should be borne by all. The drivers themselves are generally irresponsible men, and so frequently are single proprietors. The public safety and convenience will depend essentially upon the application of the rule of joint responsibility of all the proprietors, who will then see to it that their co-partners and all who are employed in the concern are trust worthy.
The defendants, as among themselves, by the terms of their agreement, all the provisions of which are binding upon them in relation to one another, may not be partners, and may be liable to each other the same as if their interests were several. This private agreement or understanding, however, can in no way vary the rights of third persons or the public, legally flowing from the general arrangement under which they hold themselves out as jointly interested, and by which they participate in the profits of the concern.
New trial denied.